# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| APPLIED GRAPHICS ASSOCIATES, INC., | Civil No. 05-1459 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING MOTION TO TRANSFER** |
| CANON BUSINESS SOLUTIONS – CENTRAL, INC., and CANON FINANCIAL SERVICES, INC., | |
| Defendants. | |

Michael L. Puklich and Patrick J. Neaton, **NEATON & PUKLICH, P.L.L.P.**, 601 Carlson Parkway, Suite 620, Minnetonka, MN 55305, for plaintiff.

Eric A. Ruzicka, Steven J. Wells, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for defendant Canon Business Solutions – Central, Inc.

Plaintiff Applied Graphics Associates, Inc. ("Applied Graphics") brings this diversity case against defendants Canon Business Solutions – Central, Inc. ("Canon") and Canon Financial Services, Inc. ("CFS"). Plaintiff asserts contract, warranty, and fraud claims against defendants arising out of plaintiff's purchase of a color copying machine and related equipment from defendant Canon.

This matter is before the Court on defendant Canon's motion to dismiss or transfer venue pursuant to Fed. R. Civ. P. 12(b)(3), 12(b)(6), and 28 U.S.C. § 1404(a). Defendant has also moved to strike plaintiff's memorandum in opposition to the motion to transfer

and to disallow plaintiff's oral argument.  For the reasons set forth below, the Court grants the motion to transfer venue and denies the other motions as moot.

## BACKGROUND

Applied Graphics, which does business under the name Jet Quick Printing, is a Minnesota corporation with its sole place of business in Wayzata, Minnesota.  Applied Graphics is engaged in the retail and commercial printing business and graphic arts. Michael F. Crom ("Crom") has owned Applied Graphics for 29 years.  Canon, an Illinois corporation and a wholly-owned subsidiary of Canon USA, Inc., is engaged in the business of selling and servicing Canon copying equipment.  CFS is a New Jersey corporation and provides lease financing for Canon copying equipment.

In September 2003, a Canon sales representative named Randall Thiele ("Thiele") approached Crom.  Thiele told Crom about several new models of Canon copiers that would soon come on the market.  Thiele also informed Crom that Canon had recently established a local office in Bloomington, Minnesota, and was able to offer better technical support because of its local presence.

In January 2004, Crom and three of his employees visited Canon's local headquarters in Bloomington to see a demonstration of the new Canon 4000 color copier. After witnessing several more demonstrations of the copier on other occasions, Crom decided to purchase the Canon 4000 copier and some related pieces of equipment.

On February 13, 2004, Thiele came to Applied Graphics's offices in Wayzata with purchase agreement and maintenance agreement forms for Crom to sign.  Crom alleges

- 2 -

that Thiele first presented him with the purchase agreement for the copier.  Crom read
both the front and back of the form.  On the back was a choice of law provision stating
that the contract would be governed by the laws of Illinois.  Crom remarked that this
provision was strange, and Thiele replied that it was an old form document, and that
Canon did not have new forms as yet.  Crom did not consider the application of Illinois
law to be of great concern, and so he signed the document.  Thiele then gave Crom the
purchase agreement for the other equipment.  Crom again read the back of the form,
which contained an identical choice of law provision, and signed it.  Finally, Thiele gave
Crom a maintenance agreement to sign.  The printing was very light, and the paper very
thin, almost translucent; it appeared to Crom, however, to be identical to the other
documents, and so he signed it without reading the reverse side.  He therefore did not see
that in paragraph 7, the agreement states:

> THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED
> IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS,
> AND THE CUSTOMER CONSENTS TO THE EXCLUSIVE
> JURISDICTION AND VENUE OF ANY STATE OR FEDERAL COURT
> LOCATED WITHIN THE STATE OF ILLINOIS UPON SERVICE OF
> PROCESS MADE IN ACCORDANCE WITH THE APPLICABLE
> STATUTES AND RULES OF THE STATE OF ILLINOIS OR THE
> UNITED STATES.  ANY AND ALL SUITS BETWEEN THE PARTIES
> HERETO, WHETHER OR NOT ARISING UNDER THIS AGREEMENT,
> SHALL BE BROUGHT ONLY IN THE STATE OR FEDERAL COURTS
> LOCATED IN OR FOR THE COUNTY OF COOK, ILLINOIS, NO
> OTHER COURT SHALL HAVE JURISDICTION OVER THE PARTIES
> HERETO, AND EACH PARTY WAIVES OBJECTIONS AS TO VENUE
> AND CONVENIENCE OF FORUM.

Hirsch Aff., Ex. C.  Crom alleges that if he had seen this language, he would have refused
to sign the form until it was deleted.  He also alleges that at no time did Thiele or anyone

else from Canon point out that the maintenance agreement form was different from the other forms.  The agreement also states that it will not be effective until it has been signed by both Canon and the customer.  A Canon representative signed the agreement on March 30, 2004.[1]

Applied Graphics received the equipment several weeks after Crom signed these agreements, and the first month of operations went fairly well.  In April 2004, however, Applied Graphics began experiencing problems with the copier, and various efforts by Applied Graphics and Canon repair personnel to correct the problems were unavailing. In May 2005, Crom gave written notice to Canon that Applied Graphics was revoking its acceptance of the Canon equipment and commenced this suit in state court.  Canon then removed the suit to this Court.

## ANALYSIS

### A.    Governing Law

Although the parties agree that they contracted to apply Illinois law to their contracts, Canon asserts, and Applied Graphics does not dispute, that federal common law governs the validity of forum selection clauses.  The Eighth Circuit has stated that it is "inclined to agree" that federal common law applies to this issue.  *Rainforest Café, Inc. v. EklecCo, L.L.C.*, 340 F.3d 544, 546 (8th Cir. 2003).

---

[1]   The original contract does not have a signature from a Canon representative; the copy submitted by Canon in support of its motion bears a signature dated March 30, 2004, and Applied Graphics does not dispute the validity of this signature.

**B.     Validity of the Forum Selection Clause**

In general, a forum selection clause is valid unless it has been obtained by fraud, undue influence, or overweening bargaining power, or is otherwise unreasonable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991). A party claiming the clause is unreasonable bears a heavy burden of proof. *Id*. at 592.

Applied Graphics presents two arguments against application of the forum selection clause. First, Applied Graphics claims that, under the circumstances of this case, it would be "otherwise unreasonable" to litigate in Illinois. Second, Applied Graphics argues that Illinois would be a seriously inconvenient place for trial.

**1.     "Otherwise Unreasonable"**

Applied Graphics argues that the circumstances under which Crom signed the maintenance agreement cast the validity of the forum selection clause into doubt. These circumstances include the fact that Thiele had made many representations concerning Canon's "local presence;" the two purchase agreements Crom signed did not contain a forum selection clause; Crom remarked on the choice of law provision and Thiele assured him it was just an "old form document;" and Thiele then presented Crom with a maintenance agreement, the reverse side of which was much more difficult to read but resembled the reverse side of the other forms. All of these circumstances taken together, Applied Graphics contends, indicate that Thiele was behaving deceptively. Applied Graphics does not attempt to argue that these circumstances indicate fraud, however. In the absence of fraud or misrepresentation, Crom's failure to read the agreement does not

excuse him from being bound by its terms.  *N&D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 727 (8th Cir. 1976); *Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982).  The Court certainly agrees that Canon, a distributor of copying equipment, ought to be able to create a document more conducive to the dissemination, rather than the suppression, of information.  While the writing on the reverse side of the agreement is certainly pale and difficult to read, however, the Court cannot agree with Applied Graphics that it is illegible, and the forum selection clause is therefore part of the contract.[2]

Applied Graphics also argues that it would be unreasonable for the forum selection clause in the maintenance agreement to overcome the lack of such a clause in the purchase agreements.  It cites no authority for why this should be so.  Parties are free to make agreements that alter the terms of earlier contracts.  *Cf. Sander v. Alexander Richardson Invs.*, 334 F.3d 712, 721 (8th Cir. 2003) (stating that "[p]ublic policy demands enforcing contracts as written and recognizing the parties' freedom to contract.")  While it is true, as Applied Graphics argues, that there would be no maintenance agreement without the purchase agreements, Canon may well have valid reasons for including such a clause only in its maintenance agreements, since such agreements contemplate a more lasting relationship between the parties than that envisioned in a simple purchase agreement.  Because the clause plainly states that it governs "any and all" suits between the parties, "whether or not arising under" the maintenance agreement, Applied Graphics cannot avoid its effect on the ground that it does not appear in the purchase agreements.

---

[2]  While the copy of the contract Applied Graphics submitted in opposition to this motion is nearly illegible, Crom Aff., Ex. C, the original copy, which Applied Graphics supplied to the Court at oral argument for its perusal, is not.

Finally, Applied Graphics points out that the maintenance agreement states that it shall not be effective until it has been signed by both parties, yet no representative from Canon signed the agreement until March 30, 2004, a month after the equipment had been installed. Again, Applied Graphics cites no authority for the proposition that the timing of this signature renders the contract invalid, and according to Applied Graphics's own statement of facts, both parties accepted and acted upon the contract. While not a necessary part of the Court's analysis, the Court also notes that there is no suggestion that Canon rushed to sign the contract in anticipation of litigation, in order to take advantage of the forum selection clause. Accordingly, the Court finds that the contract, as signed by both parties, is valid.

**2.      Serious Inconvenience**

Applied Graphics argues that the forum selection clause should not be enforced in this case because all the witnesses and evidence are in Minnesota and it would be seriously inconvenient to litigate in Illinois. The law is clear that where a valid forum selection clause exists, a party seeking to avoid it cannot simply plead the inconvenience of the other forum when such inconvenience is foreseeable at the time of the contract. Instead, the inconvenience must be so overwhelming as to have the practical effect of depriving the party of its day in court. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 (1972). Such would not be the case here. Any inconvenience to Applied Graphics in having to travel to Illinois was foreseeable at the time of the contract, and simply does not rise to the level of inconvenience that would deprive Applied Graphics of its day in

court.  *Cf. Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 727 (8th Cir. 2001) ("That attorneys, witnesses, and evidence might have to travel to Minnesota from California is not inconvenience of the magnitude contemplated by *M/S Bremen*.") Moreover, because the parties agreed to be bound by Illinois law, it is reasonable to choose Illinois as the best forum to apply Illinois law.  Applied Graphics cannot meet the "heavy burden of proof " required to set aside the clause on the grounds of inconvenience, *Bremen*, 407 at 17, and the forum selection clause is therefore enforceable.

## C.   CFS

As of oral argument on the instant motion, the other defendant in this case, CFS, had not yet been served with plaintiff's complaint.  Canon's motion seeks transfer or dismissal of the action, without distinguishing between it and CFS.  At oral argument, plaintiff's counsel indicated that if Canon's motion is granted, no part of the case would remain here because the claims against the two defendants are the same and arise out of the same contracts.  Accordingly, the Court will transfer the entire action to the Northern District of Illinois in accordance with the forum selection clause in the maintenance agreement.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Defendant Canon Business Solutions – Central, Inc.'s motion to dismiss or transfer [Docket No. 5] is **GRANTED**;

2.     Defendant Canon Business Solutions – Central, Inc.'s oral motion to strike plaintiff's responsive pleading and strike oral argument [see minutes Docket No. 20] is **DENIED**;

3.     The Clerk of Court is **DIRECTED TO TRANSFER** this case to the United States District Court for the Northern District of Illinois.


DATED:     November 14, 2005          _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                                United States District Judge